IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACKSON COUNTY, MISSOURI, by and through W. STEPHEN NIXON, JACKSON COUNTY COUNSELOR, <br><br> Plaintiff, <br><br> vs. <br><br> MERSCORP, INC., n/k/a MERSCORP HOLDINGS, INC., et al., <br><br> Defendants. | Case No. 12-0665-CV-W-ODS |

## ORDER AND OPINION GRANTING DEFENDANTS' JOINT MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Pending is Defendants' Joint Motion to Dismiss (Doc. # 68). The Motion is granted.

### I. BACKGROUND

Plaintiff, Jackson County, Missouri, filed this putative class action on April 23, 2012, in the Circuit Court of Jackson County, Missouri, which was subsequently removed to federal court on May 31, 2012. The Defendants are MERSCORP, Inc., n/k/a MERSCORP Holdings, Inc. ("MERSCORP"); Mortgage Electronic Registration Systems, Inc. ("MERS"); Bank of America, N.A.; Citimortgage, Inc.; Corinthian Mortgage Corporation; Everhome Mortgage Company; GMAC Residential Funding Corporation; HSBC Bank, U.S.A., N.A.; JPMorgan Chase Bank, N.A.; Suntrust Mortgage, Inc.; BAC Home Loans Servicing L.P.; Wells Fargo Bank, N.A.; WMC Mortgage Corporation; and John Doe Defendants 1-100. Amended Complaint ("AC"), ¶ 13-26.

Plaintiff seeks to pursue claims on its own behalf and on behalf of all other similarly situated counties in the State of Missouri and the City of St. Louis against

MERS and its parent company, MERSCORP, the owner and operator of a national registry that tracks ownership interests and servicing rights associated with residential mortgage loans. The other Defendants are various mortgage companies and John Doe defendants, which are alleged to be members of MERS, shareholders of MERSCORP, or both.

The facts of this case are derived from the factual allegations in Plaintiff's Amended Complaint. In summary, Plaintiff's allegations arise from Defendants' failure to record deeds of trust assignments and failure to pay the applicable recording fees. The class action "seeks to redress the economic and public harm to [Plaintiffs] caused by Defendants' scheme to use MERS and the MERS® System, the private electronic registry created by the biggest players in the mortgage industry to track ownership and servicing rights for residential mortgage loans, for the express purpose of avoiding recording mortgage assignments and instruments that affect real estate in county recoding offices and paying the applicable recording fees." AC, ¶ 1. As a result, "lenders, servicers, and other players in the mortgage industry have saved upwards of $8 billion, which, but for MERS, they would have paid—and previously did pay—to county recorders to record instruments in the ordinary course of business to perfect their security interests." *Id.*

Defendants and others allegedly "conspired to develop a confidential, electronic registry that would track ownership and servicing rights for residential mortgage loans 'in-house.'" AC, ¶ 4. MERSCORP, MERS, and the MERS® System were created as a result. *Id.* MERS was created "to save the mortgage industry money—recording fees— that lenders and other paid to county recorders to secure or maintain the first lien status of mortgages as mortgages were assigned multiple times during the securitization process. AC, ¶ 73. Before MERS, assignees of mortgages would record the assignments. AC, ¶ 73

MERS works as follows: when a lender issues a mortgage, the lender names MERS as "nominee" for the lender and the lender's successors and assigns and the "beneficiary" of the security instrument. AC, ¶ 5. MERS is the mortgagee of record on the mortgage, and listed as "Grantee" when the mortgage is recorded with the

appropriate county recorder.  *Id.*  MERS has a valid first lien security interest in the mortgage by virtue of the initial recordation.  *Id.*  Once MERS is listed as the mortgagee in the county records, the lender (a "member" of MERS) registers the mortgage on the MERS® System.  *Id.*  When the lender assigns the mortgage, "instead of recording the assignment with the county [recorder] of deeds in order to ensure priority against subsequent purchasers, it 'transfers' the note to another MERS member and MERS remains the beneficiary of record for both the lender and the transfers, and the holder of the security interest."  *Id.*  Subsequent transfers are tracked by the MERS® System and not recorded because "the MERS® System allows MERS Members to claim that the transfers are not assignments and, therefore, need not be recorded."  *Id.*

But for MERS, Defendants "would have paid to record assignments in order to inoculate the security interest against subsequent good faith purchasers, mortgagees, or creditors without notice."  AC, ¶ 6.  Defendant's conduct "has broken once transparent chains of title in Missouri counties' public land records by creating gaps when Defendants transfer mortgages on the MERS® System instead of recording mortgage assignments in county land records."  AC, ¶ 8.

Although Plaintiff alleges that Missouri has a statutory framework "that encourages the recording of land instruments, and specifies the consequences of failing to record land instruments," AC, ¶ 30, it does not maintain that there is a legal duty to record assignments under Missouri law.  To the contrary, and as shall be discussed later, Plaintiff concedes no such duty exists.

Plaintiff asserts five causes of action: (1) Unjust Enrichment; (2) Civil Conspiracy; (3) Prima Facie Tort; (4) Declaratory Judgment; and (5) Injunctive Relief.  Plaintiff also seeks to pierce the corporate veil of MERS and MERSCORP.

Defendants have moved to dismiss this class action on various grounds, many of which are related.  Defendants contend that the Missouri recording statutes create no private cause of action in favor of Jackson County, that Jackson County lacks standing because it cannot recover recording fees for assignments it never recorded, that there is no duty under Missouri law to record deed of trust assignments, and that Jackson County's allegations fail to state claims upon which relief can be granted.

3

## II. DISCUSSION

### A. Standing

Defendants seek dismissal because they argue Plaintiff lacks standing. Essentially, Defendants argument is that because Plaintiff has no valid cause of action, Plaintiff lacks standing. However, the absence of a valid cause of action does not implicate subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").

Further, the Court disagrees with Defendants' argument that Plaintiff lacks standing because it has not alleged an injury in fact.

To have standing, a party must show:

> (1) 'an injury in fact,' meaning 'the actual or imminent invasion of a concrete and particularized legal interest'; (2) a causal connection between the alleged injury and the challenged action of the defendants' and (3) a likelihood that the injury will be redressed by a favorable decision of the court.

*Strutton v. Meade*, 668 F.3d 549, 555 (8th Cir. 2010) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 985-86 (8th Cir. 2011)).

Here, Plaintiff has alleged an injury to its financial interest in the form of lost recording fees caused by the actions of Defendants and seeks redress in this Court. Further, Plaintiff alleges it has suffered an injury in the form of inaccurate county land records. These allegations are sufficient to establish Article III standing.

### B. Motion to Dismiss

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to

4

relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

### 1. Private Right of Action

Defendants argues the Amended Complaint should be dismissed because the Missouri General Assembly did not create a private right of action to enforce alleged violations of statutes concerning recording assignments of deeds of trust. In response, Plaintiff correctly points out that it is not suing to enforce any recording statute. Plaintiff

5

merely notes that Missouri's recording statutes "encourage" recording, AC ¶ 30, but nowhere in the Amended Complaint does Plaintiff contend that there is a duty to record under Missouri law.  Regardless of whether Missouri's recording statutes include private right of action to enforce alleged violations of statutes concerning recording assignments of deeds of trust, Defendants argument fails because Plaintiff is not asserting claims based on conduct that violates any statute.  Instead, Plaintiff asserts claims for unjust enrichment and other common law causes of action.  Finding that Plaintiff is not suing to enforce any statute, the Court will now consider Defendants' other arguments.

2. Count I: Unjust Enrichment

In Count I of the Amended Complaint, Plaintiff alleges Defendants were unjustly enriched because they gained priority through the initial recording of deeds of trust listing MERS as beneficiary, but later transferred deeds of trusts without recording the transfers and without paying the applicable recording fees.  Defendant moves to dismiss Count I because: (1) there is nothing "unjust" about recording a deed of trust in land records to put third parties on notice of the existence of that lien; (2) Plaintiff failed to allege that Plaintiff conferred a benefit on Defendants; and (3) Plaintiff's unjust enrichment claim is premised on the notion that Defendants acted improperly by not recording assignments after initial deed of trust were recorded, but no duty to record assignment of deeds of trust exist under Missouri law.  In response, Plaintiff argues that the benefit in an unjust enrichment claim does not have to be conferred *directly* from plaintiff to defendant and that its unjust enrichment claim is not dependent on the existence of a mandatory recording requirement.

The elements of an unjust enrichment claims are: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted or retained the benefit under inequitable or unjust circumstances." *Johnson v. Estate of McFarlin ex rel. Lindstrom*, 334 S.W.3d 469, 474 (Mo. Ct. App. 2010).

6

Defendants rely on two cases with similar fact patters as this case, *Fuller v. Mortgage Electronic Registration Systems, Inc.*, No. 3:11-CV-1153-J-20MCR, 2012 WL 3733869 (M.D. Fla. June 27, 2012) and *Plymouth County, Iowa ex rel. Raymond v. MERSCORP, Inc.*, No. 12-4022-MWB, 2012 WL 4903099 (N.D. Iowa Oct. 16, 2012), for support that Plaintiff's unjust enrichment claim should be dismissed. In *Fuller*, the Middle District of Florida granted Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim because: (1) plaintiff, the clerk of the court of Duval County, Florida, could not allege that he provided a benefit to MERS because MERS had no legal duty to file mortgage assignments; (2) plaintiff could not allege that MERS failed to pay the recording fee for any mortgage or assignment that plaintiff recorded; and (3) plaintiff did not confer a benefit upon MERS by recording a mortgage because "[a]ny benefit from recording a mortgage . . . is derived from Florida law—i.e. priority of a lien—not from Plaintiff." *Fuller*, 2012 WL 3733869, at *14.

Similarly, in *Plymouth County*, the Northern District of Iowa dismissed plaintiff's unjust enrichment claim in plaintiff's first complaint because it failed to allege any conduct that was unjust because there is no duty to record assignments under Iowa law. 2012 WL 4903099, at *2-3. The unjust enrichment claim was premised on the allegation that defendants recorded only the original mortgage, with MERS as the mortgagee, and then assigned the mortgage among defendants without recording those assignments. 2012 WL 4903099, at *3. Then, the court found that the unjust enrichment claim in the proposed amended complaint was futile and did not warrant leave to amend because "the lack of subsequent assignments was not 'at the expense of' the County, unless recording of subsequent assignments, and payment of associated fees, was *required*, which it was not." *Id.* at *17.

Here, Plaintiff has failed to state a claim for unjust enrichment. First, there is no duty to record assignments under Missouri law. Mo. Rev. Stat. § 443.035 ("Security instruments may be assigned . . ., and *may be recorded* in the office of the recorder of deeds in the county or counties in which the security instrument being assigned was recorded.") (emphasis added); *see also Sando v. Phillips*, 319 S.W.2d 648, 653 (Mo. 1959) ("There is no duty on a grantee to record a deed, and the failure to record does

7

not in any way affect the validity of a deed between parties."). Plaintiff asserts that its unjust enrichment claim does not rely on an alleged requirement to record assignment and concedes that Missouri law merely "encourages" recording. AC ¶ 30; Plaintiff's Suggestions in Opposition, p. 26. Even so, Plaintiff's unjust enrichment claim is premised on the notion that Defendants acted improperly by not recording assignments after initial deeds of trust were recorded; therefore, Plaintiff's unjust enrichment claim necessarily is rooted in a duty to record.

Next, Plaintiff has not alleged that it conferred a benefit onto defendant either directly or indirectly, and has not alleged that Defendant appreciated the benefit and retained it under inequitable circumstances. The ability to name MERS as mortgagee and/or grantee of record on mortgages, and "exploiting MERS" status to transfer mortgages among MERS Members without recordation and payment of recording fees" is the benefit that is alleged to have been conferred onto Defendants. AC, ¶ 151. Further, the MERS Members benefited from the priority conferred by the Missouri recording statutes, which enabled them to represent in agreements that they had good title and were transferring good title. AC, ¶ 152. These benefits are the protections derived from recording the initial mortgage. However, Plaintiff does not allege that Defendants fail to pay the applicable recording fees for the initial deeds of trust that were recorded.

In its Suggestions in Opposition to Defendants' Motion to Dismiss, Plaintiff relies on *Montgomery County v. MERSCORP*, No. 11-cv-6968, 2012 WL 5199361 (E.D. Pa. Oct. 19, 2012), which upheld Plaintiff's theory of unjust enrichment arising out of the defendants' use of MERS. However, Plaintiff's reliance on *Montgomery County* only highlights the flaw in its claim. In that case, the court found that plaintiff's allegations stated a viable unjust enrichment claim because Pennsylvania's recording statute requires that all assignments be recorded. *Id.* at *12. Because defendants failed to record assignments and pay the recording fee, defendants action were in violation of the statutory command to record such assignments. *Id.* Unlike the Pennsylvania statute at issue in *Montgomery County*, under Missouri law, there is no duty to record deeds of trust or other assignments.

Plaintiff has failed to state a claim for unjust enrichment. Accordingly, the Court dismisses Count I.

### 3. Count II: Civil Conspiracy

Plaintiff's civil conspiracy claim is based on its claims of unjust enrichment.[1] Specifically, Count II alleges that Defendants "conspired with each other to parlay the benefit of 'perfecting' mortgages, which is accomplished by recordation, to represent that they had and were transferring good title to mortgages . . . throughout the mortgage securitization process without recording such assignments and paying the applicable recording fees due to Jackson County and each Class member." AC, ¶ 158. Defendant argues that Count II should be dismissed because it fails to allege an underlying tort or a wrongful act to support a conspiracy under Missouri law.

"A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act or use unlawful means to do an otherwise lawful act." *Trimble v. Pracna*, 51 S.W.3d 481, 500 (Mo. Ct. App. 2001). It is not a cause of action unto itself, but rather a means of extending liability to parties who may have aided others in committing a tort without committing all of the elements of the tort themselves. *Id.* at 501. "To establish a cause of action for civil conspiracy, a plaintiff must plead facts that support each element, which are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) resulting damages." *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center*, 280 S.W.3d 678, 698 (Mo. Ct. App. 2009) (internal quotations omitted).

As previously discussed, Plaintiff's unjust enrichment fails to state a claim. Plaintiff's civil conspiracy also fails because it is based on the same "scheme" that is alleged in Plaintiff's unjust enrichment claim—that Defendants were "benefited" by an initial recorded mortgage and represented that they were transferring good title without

---

[1] Count II is brought against the Member Defendants, Shareholder Defendants and John Doe Defendants 1-100.

recording assignments and paying the recording fees. "In Missouri, if tortuous acts alleges as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996) (en banc). Count II is dismissed.

### 4. Count III: Prima Facie Tort

Count III of Plaintiff's Amended Complaint raises a cause of action for prima facie tort.[2] Defendant argues Count III should be dismissed for a multitude of reasons—most importantly because Plaintiff fails to plead facts showing Defendants' intent to injure Plaintiff.

"A claim alleging a prima facie tort 'is disfavored under Missouri law, particularly when a party has another remedy or another potentially submissible tort claims available.'" *Tamko Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822, 830 (8th Cir. 2006) (quoting *Kelly v. Golden*, 352 F.3d 344, 350 (8th Cir. 2003)); *see also Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 n.4 (Mo. 2000) (en banc) ("It is difficult to find reported cases where a plaintiff actually has recovered on a prima facie tort theory."). "A claim for prima facie tort must establish: (1) an intentional lawful act by defendant; (2) an intent to injure the plaintiff; (3) injury to plaintiff, and, (4) insufficient justification for defendant's action." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996) (en banc).

Here, Plaintiff's Amended Complaint merely asserts that Defendants "intended that their conduct would injure" Plaintiffs. AC, ¶ 163. Nowhere does the Amended Complaint allege that Defendants acted maliciously. Under Missouri law, the mere awareness that one's conduct would harm the Plaintiff is not enough to establish an actual intent to injure; Plaintiff must prove that Defendant acted with "specific, clear-cut, express malicious intent to injure." *Tamko Roofing Products, Inc.*, 450 F.3d at 831 (quoting *Woolsey v. Bank of Versailles*, 951 S.W.2d 662, 669 (Mo. Ct. App. 1997). In

---

[2] Count III is brought against MERS, Member Defendants, Shareholder Defendants, and John Doe Defendants 1-100.

10

fact, as Defendants correctly point out, the Amended Complaint's factual allegations demonstrate that Defendants intended only to save money and time by not recording assignments. AC, ¶ 71, 73.[3] The Court need not address Defendants' other arguments for why the prima facie tort claim should be dismissed because the claim fails because Plaintiff has failed to allege that Defendant acted with malicious intent. Count III is dismissed.

### 5. Counts IV and V: Declaratory Judgment and Injunctive Relief

Defendants move to dismiss Counts IV and V because declaratory judgment and injunctive relief are remedies and not independent causes of action. In the alternative, Defendant argues that because Plaintiff's primary claims fail, there is no cognizable claim for declaratory or injunctive relief.

A declaratory judgment is strictly remedial in nature. *First Federal Sav. And Loan Ass'n of Harrison, Ark. v. Anderson*, 681 F.2d 528, 533 (8th Cir. 1982). "Whether to entertain the action rests in the discretion of the judge, and a declaratory judgment action should lie only in cases where it could be of some practical convenience to the parties." *Jameson v. State Farm Mut. Auto Ins. Co.*, 871 F.Supp.2d 862, 871 (W.D. Mo. 2012) (internal quotations omitted). Here, Plaintiff has failed to assert a proper claim for relief that supports the request for a declaration. Because a declaratory judgment is remedial in nature, and Plaintiff has failed to allege a claim that supports a declaration, the Court exercises its discretion in dismissing Plaintiff's request for declaratory judgment.

The Court agrees that there is no "injunctive" cause of action under Missouri or federal law. "Instead, Plaintiffs must allege some wrongful conduct on the part of Defendant for which their requested injunction is an appropriate remedy." *Fletcher v. Conoco Pipe Line Co.*, 129 F.Supp.2d 1255, 1264 (W.D. Mo. 2011); *see also Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08-CV-1719-JCH, 2010 WL 1691184 (E.D.

---

[3] The same analysis may show that there was sufficient justification for Defendants' actions. In light of the Court's analysis, there is no need to reach this issue.

11

Mo. April 27, 2010) (holding that Plaintiffs could seek injunctive relief as part of their prayer for relief, but the remedy cannot stand as a separate cause of action). Plaintiff argues that it has alleged viable claims for unjust enrichment, civil conspiracy, prima facie tort, and declaratory judgment, and therefore, the court should grant injunctive relief. Plaintiff's injunctive relief remedy is not attached to a viable claim because this Court has dismissed Plaintiff's common law claims. Counts IV and V are dismissed.

### III. CONCLUSION

If Plaintiff seeks redress, it must go to the Legislature to get the statute changed. Until there is a legal duty to record assignments, Plaintiff cannot recover for the failure to record. Plaintiff cannot enforce a nonexistent obligation. Defendants' Motion to Dismiss is granted, and Plaintiff's Amended Complaint is dismissed in its entirety for failure to state claims upon which relief can be granted.

IT IS SO ORDERED.

DATE: January 14, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT